# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARINE GROUP BOAT WORKS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>F/V HEATHER G and ATLANTA PACIFIC TUNA, INC.,<br><br>Defendants. | Case No. 25-cv-00319-BAS-DDL<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR INTERLOCUTORY VESSEL SALE AND AUTHORIZATION TO CREDIT BID (ECF No. 18)** |

Before the Court is Plaintiff Marine Group Boat Works, LLC's Motion for Interlocutory Vessel Sale and Authorization to Credit Bid. (ECF No. 18.) Specifically, Plaintiff requests the Court determine that Defendant F/V HEATHER G ("DEFENDANT VESSEL") is liable to deterioration or decay, that the expenses of keeping her in custody are excessive and disproportionate, that there has been an unreasonable delay in securing

her release from arrest, and that therefore it is just and proper for the Court to order the United States Marshal to sell DEFENDANT VESSEL at public auction as soon as possible pursuant to Rule (E)(9)(a) of the Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims. (ECF No. 18-1.)

## BACKGROUND

Earlier in a separate action between Parties, the Court ordered the U.S. Marshal to seize DEFENDANT VESSEL and appoint a Substitute Custodian. *See Marine Group Boat Works, LLC v. F/V Heather, a 1979 73.6 Foot Commercial Fishing Vessel*, No. 24-cv-1303-W-DDL (S.D. Cal. July 31, 2024), 2024 WL 3611151. The referenced action was dismissed following a settlement. Parties then executed a Settlement Agreement, which memorialized the indebtedness of the owner of DEFENDANT VESSEL (Atlantic Pacific Tuna, Inc.) to Plaintiff in the amount of $106,862.25, required an initial payment to Plaintiff in the amount of $35,000.00, and provided that the balance of the indebtedness was to be satisfied by Atlantic Pacific making $10,000.00 payments each month beginning October 1, 2024 through April 1, 2025, with a final payment of $862.25, plus interest on the indebtedness, calculated at 10% per annum. (ECF No. 13 ¶ 7.) Defendant Atlantic Pacific Tuna, Inc. failed to make payments as required under the Settlement Agreement after January 2025. (ECF No. 13 ¶¶ 8, 11.)

Plaintiff brought the current vessel action to foreclose on its claim under the Promissory Note and Preferred Ship Mortgage. As part of the current action, pursuant to Court Order, the U.S. Marshal arrested DEFENDANT VESSEL and turned custody of her over to Plaintiff, the appointed Substitute Custodian. (ECF Nos. 7, 9, 10.) Plaintiff also filed a maritime lien of $32,220.00 with the United States Coast Guard to reflect the amount not yet paid to High Seas Fuel Dock, who provided fuel and other maritime necessaries for the benefit of DEFENDANT VESSEL. (ECF No. 13 ¶¶ 18–19.)

Plaintiff then filed the Amended Complaint to seek recovery based on both the assigned maritime lien, and its claim based on breaches of the Promissory Note and Preferred Ship Mortgage. (ECF No. 13.) Because no one appeared on behalf of DEFENDANT VESSEL to file an answer or other responsive pleading to the Verified Complaint (*see Marine Group Boat Works, LLC v. F/V Heather, a 1979 73.6 Foot Commercial Fishing Vessel*, No. 24-cv-1303-W-DDL (S.D. Cal. July 31, 2024), ECF No. 1) within the time permitted by the Federal Rules of Civil Procedure, the Clerk of the Court granted Plaintiff's request to enter the Default of all Defendants. (ECF No. 17.) Since then, expenses for the upkeep of DEFENDANT VESSEL continue to accrue and the boat is subject to deterioration as it sits idle. (ECF Nos. 18-1, 18-2 ¶ 3.) Plaintiff now seeks the Court to order the public sale of DEFENDANT VESSEL. Plaintiff alleges that the best way for the Court to preserve the value of the *res* is to convert it to money, by way of public auction.

## LEGAL STANDARD AND ANALYSIS

### I. Legal Standard

Rule (E)(9)(a)(i) of the Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims, which governs interlocutory vessel sales, provides that:

> [The Court] may order all or part of the property sold—with the sales proceeds, or as much of them will satisfy the judgment, paid into the court to await further orders of the court—if:
> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
> (B) the expense of keeping the property is excessive or disproportionate; or
> (C) there is an unreasonable delay in securing release of the property.

In order to prevail on a motion for interlocutory sale, the moving party need only show that one of these three conditions is met. *Bartell Hotels v. S/V Talus*, 445 F. Supp. 3d 983, 987 (S.D. Cal. 2020); *see also Sun Harbor Marina P'ship v. M/Y THE BELLA DOG*, No. 3:25-CV-00051-JES-KSC, 2025 WL 1425557, at *2 (S.D. Cal. May 16, 2025).

In other words, the three factors laid out in Rule E(9)(a)(i) are "disjunctive." *Shelter Cove Marina, Ltd. v. M/Y ISABELLA*, No. 17-cv-01578-GPC-BLM, 2017 WL 5906673, at *2 (S.D. Cal. Nov. 30, 2017).

Upon sale, vessel auction proceeds can become the substitute *res* for DEFENDANT VESSEL where a vessel is the target of an *in rem* action in admiralty. *See e.g.*, *United States v. F/V MILAGROS Z*, No. CIV.96-1633 BTM(JFS), 2000 WL 33309870, at *2 (S.D. Cal. July 26, 2000); *see also TMF Tr. Ltd. v. M/T Megacore Philomena*, No. CV 17-9010-AGR, 2018 WL 6174705, at *1, n. 1 (C.D. Cal. July 10, 2018) ("[T]he sale price [can] substitute[] for the Vessel as the res").

## II. Analysis

### A. Interlocutory Sale of DEFENDANT VESSEL Permitted Under Rule (E)(9)(a)

Pursuant to Rule (E)(9)(a)(i)(A), Plaintiff first argues that as DEFENDANT VESSEL's machinery, equipment and general conditions deteriorate while in custody, her value is commensurately decreasing. (ECF No. 18 at 5.) To support this contention, Plaintiff submits a Declaration from Ray Jones, a licensed yacht broker of 42 years who has sold thousands of vessels and offered expert opinion in dozens of cases involving arrested vessels. (ECF No. 18-2 ¶¶ 1–2.) In his Declaration, Jones states that as DEFENDANT VESSEL's machinery, equipment and general conditions deteriorate while in custody, her value is commensurately decreasing. (*See* ECF Nos. 18 at 6, ECF No. 18-1 ¶¶ 1–2.) While an arrested vessel sits idle, her engines, generators, and other equipment are not operated under load (if at all), and such disuse can detrimentally impact the condition and value of the vessel. (ECF No. 18-2 ¶ 3.) Prolonged idleness associated with the arrest of a vessel leading to physical deterioration can justify the interlocutory sale of a Defendant Vessel. *See Bartell Hotels*, 445 F. Supp. 3d at 987-88 (S.D. Cal. 2020). Based upon Jones' testimony, the Court finds that DEFENDANT VESSEL is liable to deterioration within the meaning of Rule E(9)(a) while in custody. *See id.*

Pursuant to Rule (E)(9)(a)(i)(B), Plaintiff next argues that the cost of keeping DEFENDANT VESSEL in custody is excessive and disproportionate. (ECF No. 18 at 8.) Plaintiff's expert, Ray Jones, estimates that the fair market value of DEFENDANT VESSEL is now approximately $350,000.00, and Plaintiff estimates that monthly Substitute Custodian fees will continue to accrue at not less than $7,570.00 per month until DEFENDANT VESSEL is sold. (*See* ECF Nos. 18-1, 18-2 ¶ 6.) "Maintenance expenses of several thousand dollars per month, particularly where [no attempt has been made] to answer Plaintiff's complaint or secure the Vessel's release, are excessive and disproportionate." *Vineyard Bank v. M/Y Elizabeth I, U.S.C.G. Off. No. 1130283*, No. 08CV2044 BTM WMC, 2009 WL 799304, at *2 (S.D. Cal. Mar. 23, 2009); *see also GB Cap. Holdings, LLC v. S/V Glori B*, No. 18CV312-WQH-AGS, 2019 WL 277387 (S.D. Cal. Jan. 22, 2019) (holding accrued costs of $2,430 per month excessive and disproportionate to the vessel's $6,000 fair market value). Accordingly, the Court finds that the cost of keeping DEFENDANT VESSEL in custody is excessive and disproportionate under Rule E(9)(a).

Lastly, pursuant to Rule (E)(9)(a)(i)(C), Plaintiff argues that since DEFENDANT VESSEL's arrest there has been no effort to secure its release, which has resulted in an unreasonable delay. (ECF No. 18 at 7.) "Courts generally allow at least four months for the provision of a bond to secure the release of a vessel before granting an interlocutory sale on grounds of unreasonable delay." *See GB Cap. Holdings, LLC*, 2019 WL 277387, at *4; *see also Bartell Hotels*, 445 F. Supp. 3d at 988 (noting general rule allowing at least four months to post security and finding a delay of almost 6 months unreasonable under Rule (E)(9)(a)); *see also Sun Harbor Marina P'ship*, 2025 WL 1425557, at *2 (noting general rule allowing at least four months to post security, unreasonable delay found where no attempt made in 5.5 months to secure vessel's release from custody under Rule(E)(9)(a)). DEFENDANT VESSEL was arrested on March 14, 2025. (ECF No. 9.) Calculated through the date of this Order, DEFENDANT VESSEL has been under arrest for 201 days, which is 6.6 months. The record does not show any attempt to secure

DEFENDANT VESSEL's release since. The Court therefore finds that there has been an unreasonable delay within the meaning of Rule E(9)(a).

In light of DEFENDANT VESSEL's likelihood of deterioration, the unreasonable delay in securing her release and the excessive and disproportionate cost of keeping her in custody, the Court finds interlocutory sale is warranted under Rule E(9)(a) and **GRANTS** Plaintiff's Motion in this regard.

### B. Plaintiff has Authorization to Credit Bid

Plaintiff asks the Court to authorize Plaintiff to credit bid at DEFENDANT VESSEL's auction in an amount up to the total indebtedness, which includes: (1) the lien amount attested to under oath in the First Amended Verified Complaint ($72,704.97); (2) Substitute Custodian fees accrued through this Motion's hearing date (September 27, 2025) pursuant to this Court's Order Appointing Substitute Custodian in the amount of $42,924.00; (3) $405 filing fee; (4) attorney's fees in the amount of $12,420.60 calculated through this Motion's hearing date; and (5) further Substitute Custodian and attorney's fees accruing after the hearing date until DEFENDANT VESSEL is sold. Plaintiff asserts that as the only maritime lien claimant, it is by definition senior to all other claims in this action. (ECF No. 18.)

Under the Civil Local Rules, when the court determines on the merits that a plaintiff or plaintiff in intervention has a valid claim senior in priority to all other parties, that plaintiff in intervention foreclosing on a properly recorded and endorsed preferred mortgage, or other valid security interest in the vessel may bid, without payment of cash, certified check or cashier's check, up to the total amount of the secured indebtedness as established by affidavit filed and served on all other parties no later than seven (7) days prior to the date of sale. CivLR E.1(e)(2). There is nothing in the record to indicate that a party aside from Plaintiff has asserted any maritime lien claim against DEFENDANT VESSEL. It follows that Plaintiff has a valid claim senior in priority to all other parties, and thus the Court finds it appropriate to **GRANT** Plaintiff's request to credit bid at DEFENDANT VESSEL's auction.

## CONCLUSION

Accordingly, the Court **GRANTS** Plaintiff's Motion for Interlocutory Vessel Sale and Authorization to Credit Bid, including Plaintiff's requests for the Court to order an interlocutory vessel sale of DEFENDANT VESSEL and to authorize Plaintiff's request to credit bid at DEFENDANT VESSEL's auction as senior claim holder.

**IT IS SO ORDERED.**

DATED: October 1, 2025

Hon. Cynthia Bashant
United States District Judge